May I reserve three minutes for rebuttal, please? Yes. Thank you, Your Honors. Your Honors, the resolution of this appeal turns on a straightforward application of the law of the circuit doctrine as announced by this court, which requires newly constituted panels of the court to follow, and lower courts within the circuit, to follow decisions of prior panel decisions directly on the same point. In this case, the prior precedent is United States v. Bucci, where this court held that use of poll cameras just to surveil the front of the house, its garage, and driveway for eight months did not violate the Fourth Amendment, because the defendant simply had no reasonable expectation of privacy in that area. The district court in this case, faced with a poll camera that addressed the same area of the house for the same period of time, felt that it was not bound by Bucci, because the district court's intervening decision in United States v. Carpenter had so altered the law that Bucci was no longer binding. This is incorrect for the reasons set forth in the government's brief. The two exceptions to the law of the circuit doctrine, the first of which is that the law of the circuit doctrine does not apply where the decision has been expressly overruled by the Supreme Court or by a statute or by an en banc ruling of this court. Clearly, it does not apply. Ms. Carpenter did not address poll cameras or expectations of privacy in the front of a house, so it simply could not have overruled Bucci. The second exception of the doctrine on which the defendants appear to principally rely and the district court relied was that this court may, in rare cases, nonetheless revisit a decision where the reasoning of the Supreme Court decision calls into question so sufficiently the grounds for the early decision that this court believes that the earlier panel would reconsider its early decision if it knew about the intervening precedent. That also does not apply here for several very clear reasons apparent in the Carpenter decision itself. First, the Carpenter decision recognized a very narrow and limited expectation of privacy in the totality of a person's movements. Those movements, as reflected in the collection... Mr. Counsel. Yes, Your Honor. It's true as to outcome, but my understanding of the second exception to the law of the circuit doctrine is that we really should be focusing on the rationale of the prior opinion and whether that rationale could be squared with the rationale set forth in a subsequent Supreme Court opinion. And as I understand the rationale in Bucci, it's fairly sweeping, which is that you cannot have an expectation of privacy in things you expose to the public. And I don't really see another rationale set forth in Bucci. But I find it hard to see how that rationale, given how categorical it is, can be squared with Carpenter's. So could you just address that point? Well, I think the key thing to recognize is that statement, which the Bucci states, is drawn specifically from Katz, which says that one does not have reasonable expectation of privacy. But at the time of Katz, it wasn't clear that that could apply not to somebody who locks themselves in a phone booth, but to somebody just appearing in public. Right. But after Carpenter, it is clear that that test from Katz can apply to such a circumstance. It's not at all clear to me that Bucci foresaw that aspect of Carpenter's interpretation of Katz. I'm not sure that it's required that the court have foreseen the specific evolution of the law. I mean, I think that the point is not whether the court knew everything that we now know, but it's whether the decision of the earlier decision is, in fact, undermined or called into question by that reasoning. And I think that's important here, because one of the things we point out in our brief Well, could you just square the statement? How could one square the statement in Bucci with the outcome in Carpenter? Well, that's the point. Your Honor stated that the point is to look at the rationale. Yes. And the rationale in Carpenter is that it does not. Someone asked, how do you square the rationale of Bucci with the outcome in Carpenter? I think the general principle continues to apply that activities as opposed to the public are not subject to Fourth Amendment protections. What it does, what Carpenter does, is it carves out a very narrow exception. I think that's the best way to say it. Is it the word generally that you threw in there? Well, what it Because as I understand Bucci, it says they are not. It doesn't say generally. And because that's a categorical statement, I don't see how one can square that with the outcome in Carpenter. Well, again, I think perhaps I would disagree that one can look at the single statement in Bucci to say whether that can be squared precisely with the outcome is the question to be answered. The question is whether the rationale of Bucci, the rationale of Bucci, which relies on Katz, Serrano, and other cases that are applying the principle that as a general matter, activities exposed to the public. Again, Your Honor is asking me to square a specific statement. Well, only because it's the only statement in Bucci. Well, no, but Bucci, we understand Bucci in terms of the cases on which it relies as well. And as we know, numerous, several other appellate courts have addressed the same issue based on the same precedents and come to the same conclusion. To be sure, Bucci is a very brief discussion of the issue. But it does cite the same cases that other courts have relied on, which stand for the proposition, and Katz again says specifically, that activities voluntarily exposed to the public are not subject to a reasonable expectation of privacy. Now, that gives rise to one potential answer to Your Honor's question, which is that Katz stated voluntarily exposed to the public. And one of the concerns, clearly apparent in Carpenter, is that they question whether that can really truly be said of the information that is provided through third-party doctrine with respect to cell phone information. That is, one does not, the concern was because it's automatic and applies to everyone, that there's not a sense in which one is choosing. It's simply a matter of the necessary use of the device that it does this, and so the idea of it being voluntarily submitted was questioned by the Supreme Court. So one could say that that is one ground for seeking to reconcile the two statements. Wouldn't that have some application to stepping outside your front door? I don't think so, because it's the nature of what we're talking about here is physical observation, and I think the cases on physical observation are very different from the ones that involve detection by these other means, these electronic means. This is physical observation in the cases involving aerial surveillance, even enhanced visual surveillance has not been held to implicate a reasonable expectation of privacy if the activity being surveilled is not activity that the person is trying to keep private. And so here you have an activity occurring in a public place visible from the street, no apparent efforts to hide it. And this is the same kind of information that could be observed through surveilling officers, the same kind of information that could be observed by passersby. So it might be a lot more difficult for officers to do it for the eight-month period that was at stake here. That's certainly true. One thing I would note, that it's not the case that that's never done. We know in terrorist cases that sometimes they would rent an apartment across the street from the activity in order to do exactly that, to surveil something around the clock. So it's not impossible, but it's certainly costly and unlikely. But it's also true that the court has not held the mere fact that it would be more difficult to do it by other means is a reason for saying that generally it can't be done by a simpler means. And that one case that we were noting, the case of Dow Chemical case, was one in which they allowed the use of aerial mapping camera that could engage in magnification beyond what a person could visually observe from an airplane, did not change the analysis of further cases like Sorello, which said that visual observation of something from above would be permissible. Because the mere fact of using some technology to enhance what would otherwise be visible is not a problem. I would also note a case which I'm happy to submit in a 28-J letter, which I discovered in preparing here. And that case is, let's see, sorry, it involved the use of, it's not funny at this moment, Ovega Rodriguez versus Puerto Rico Telephone Company. And this involved surveillance in a workplace. And one of the issues involved was the fact that while it was taking place in a public area of the workplace and could be observed by anybody, whether it mattered that it was being recorded by a camera. And the court rejected the idea that there was a constitutional significance to the fact that it was recorded rather than simply being observed if it was in an area where a person could observe it. One question that you're just example about the aerial surveillance. Is the logic of your position that if the government put a drone over somebody's backyard for eight months, it'd be fine? I think that it could be. The logic of our position is limited to publicly observable activities in areas that are not subject to an expectation of privacy. So that would derive the idea that an aerial flight, because that has been upheld as okay, you could then just keep a drone over the house for eight months? I mean, I think there would be natural limitations to that, including the fact that it could be observed. And one of the points that I think is worth noting here. So you just have to stay inside for eight months? No, I think, again, the point is whether activities that one voluntarily exposes to the public are protected from observation. And again, the repeated holdings of the courts and courts of appeals addressing poll cameras is that it is not. Yes, I guess, and I don't know if there's a clean answer to this question. But the Supreme Court is obviously showing concern about new technologies and privacy. In the Riley case, you could easily have read the precedent to, as the government argued to us, and as one could have reasonably found, that a cell phone was no different than a diary, and the court concluded that's not the right way to look at it. In Carpenter, one easily could have concluded that cell phone locations are no different than business records, and the court concluded that's not the right way to look at it, given the difference in technology. So we've got a case just like that. And the concern is, under the logic that you're offering to us, every house in the neighborhood could have a camera put up 40 feet high, trained on the front door of every single house without any warrant, no suspicion, no judicial check. And on the government's view, that's no cause for concern, because when people open their front doors, they expose themselves to the public. So suppose I was concerned that that doesn't really sound like a free society if it was set up that way. What would be the government's answer so I shouldn't be concerned? Well, to be honest, the answer in this case is that the case before it is not that case. And one of the things that's important, a lot of the amicus filings argue about facial recognition and software that might be implemented in the future to make even the pole cameras more intrusive than they are. The pole camera here is what we could call a very old-school mechanism. Pole cameras have been in use for decades. The particular type of magnification here has been in use for at least a couple of decades. We're not talking about that kind of things raising the particular kinds of concerns that clearly animated the court in coverage. There's no doubt that it was concerned. But just so I'm getting the government's argument, is how does that point that we would treat differently a camera that could zoom in more closely on the outside area was better at recognizing faces? Why would that be any different given what you say is the principle set forth in Bucci that controls and that Carpenter doesn't disturb? Well, the principle is that, and this is what I would rely on here, I think it's very important, is what could be observed from the street? What could be observed by passersby? And that is critical, I think, here because what the magnification that was used, the limited magnification did not, and the pictures show this, show anything more than what could be seen from the street. It showed licensed places that you could see if you're walking by on the sidewalk or on the street. I think different questions could certainly be raised if the technology exceeds that because the rationale of all those cases is it's what can be observed from a position where the officers have a right to be by ordinary means. And this camera did no more than that. But one can certainly say that additional concerns arise when it goes beyond that. But the case here is limited to effectively a simple poll camera, which did not intrude upon any of those concerns or go beyond those precedents. Your Honor? No, I'll save my questions for the other side. Thank you. Thank you, Your Honor. I just have one question. Do you see anything in Carpenter that suggests a temporal limit on the type of technology used here? If it's not eight months, is there one? I don't think there's anything because I think that this falls outside of the rationale and is governed by the existing precedents. I mean, very clearly it does not disturb or attempt to limit those precedents. I don't think it falls within the general rule that activities exposed to the public are just not the subject of Fourth Amendment protection. So I don't think it requires a limitation under current law. Thank you, Your Honor. Good morning, Your Honor. It's Judith Meisner representing the aptly Neimor Bush. Following up on your question, Judge Barron, I think that there is a significant difference between the Bucci analysis and not only the analysis in Carpenter but the analysis by the court below, relying on the analysis in Carpenter, that the privacy interest at stake here is not simply what you see in the front. yard from a public space. But the eight months of constant 24-7 surveillance and observations of associations, comings and goings, your movements and your associations, and a poll camera that was zooming in to get faces, to get license plate numbers, and to use that information to further investigate associations. So I don't think that the law of the circuit precludes this panel from applying the analysis in Carpenter. You're relying only on the second exception, or are you asserting that Carpenter directly overruled? No, I am not asserting Carpenter directly overruled. First of all, I'm asserting that the privacy interest described in Bucci is different from the privacy interest described in this case, and therefore the law of the circuit would not preclude under any event. But if— As I understand it, the poll camera could not capture the front door, did not capture— I don't know if there was a porch at the front door. What it captured was the driveway, whatever car was in the driveway or truck. The garage door and a portion of the walkway going up to the door. I don't even know if there was another access to the front door. Do I understand that correctly? Well, it also captured the right part of the front of the home and the side door. Well, yes. And the attached garage in the driveway is what the record reflects. Okay, so this doesn't involve the front door of the house. No, but there are many people who use the side door of their house rather than the front door. The front door is not an exclusive— Nothing the government's offer shows people going in and out of a side door. Is that correct? Excuse me? Nothing that the government purported to offer in terms of photographs showed people coming in and out of the side door. I don't believe so. Okay. But you had people in the curtilage of the home. Yes. You know, I can share concerns about what the law is going to look like in the future. But in many ways, I wonder whether this is an appropriate case to get into that. There clearly was reasonable suspicion to set up the poll camera in the first place as you go back and look at the record in this entire case. It is also clear that with the poll camera information and some other information, that a series of warrants were issued thereafter, search warrants, cell phone monitoring applications, wiretaps, and each of those items required a court to find that there was probable cause. So this is not a case of eight months of the government just watching and not coming up with any information at all. In each of those eight months, according to the affidavit that was put in for the November 9th warrant which was issued, there was some activity that was captured which then led to further warrants, to a series of warrants of different types being issued. This is in the record in the case. It is true that the judge did not discuss this at all. But in a case where the, had you gone for a, had the government gone for a warrant, it is quite likely that a court would have found early on that there was probable cause here. So this, I fully appreciate the hypothetical about a drone over the backyard for eight months. But that is not this case. Well, but this is not a hypothetical situation. No, no. The Supreme Court itself has been enormously careful about distinguishing different types of new technology and how, whether to accept the old rules as to each type of new technology. And it seems to me that part of that caution requires that we look at what actually happened in this case. But what actually happened is... So you distinguish because the poll camera, you say, allowed somebody to focus in more clearly. The affidavit says that a state police trooper actually sat in a car and looked through binoculars the equivalent of zooming in. Correct? Yes, there were observations. Yes, that actually happened. So given that, why is that a distinguishing feature from the Bucci case? I don't, I'm not saying that the zooming in alone is a sufficient... Okay, so give me your list of reasons why you think this case is different. It's not zooming in alone. Bucci's rationale, the only rationale in Bucci was... Not to worry, we're going to work through this. Thank you, Your Honor. That the legal principle that an individual does not have an expectation of privacy in items or places he exposes to the public, and that that disposed of the matter. So if that is the rationale in Bucci, I suggest that Carpenter cannot really be reconciled... Okay, and therefore any case, regardless of the facts, which uses that rationale, you say is no longer good law. Regardless of the underlying facts in the case. I'm not saying that it's not good law for the time saying that it does not preclude this court from examining whether this case requires a different resolution than the court reached in Bucci. The fact that there may have been reasonable suspicion to instigate an investigation doesn't preclude an obligation to get a warrant if you need probable cause. If this is a search that requires probable cause and a warrant. Okay, well, on the logic of your argument, the search started once the poll camera was put up, right? Yes. And it's irrelevant whether the poll camera in fact produced evidence that led to the issuance of other warrants. That has to be the logic of your position. I'm saying that it is a search. It did in fact produce evidence that was used to obtain warrants. And so it did have some impact in this case. It's not a hypothetical... So would the same rationale apply to an officer surveilling with a video camera? That officer has to get a search warrant ahead of time? Yes. Why not? Circling?  Surveilling. From across the street? No, because the court has distinguished between the types of individual actions by an officer sitting in a car and the 24-7 continuous surveilling. So if it's a poll camera for one 24-7 cycle, is a search warrant required ahead of time? I don't know that any of the cases have addressed the... No, what's the logic of your position? Isn't the logic of your position that before the officer could say whether or not the officer needed to show probable cause? The fact that a poll camera is used rather than an officer requires probable cause. That has got to be the logic of your position. The logic of the position is that we're dealing with the facts of this case. And that the eight-month long surveillance... to do all sorts of other things in terms of getting warrants, Title III applications, etc. I'm just trying to figure out at what point one needs, under your theory, one needs to apply for a warrant to use a camera. Well, I think if you're anticipating using the camera for more than a single flyover or a single observation, then you should get a warrant. Why do you need to go that far? I thought in Carpenter they had a six-day limitation. I'm not sure. The court could set a... I mean, there's no doubt it's going to be somewhat arbitrary. It was arbitrary in Carpenter when they picked six days. But I don't see why it has to be necessarily the first moment, just like the location records. It wasn't the very first instance they get a location record. There was a fourth one from the court suggested that when it was as extensive as it was, and it said that as a benchmark, was six days. Right, but no, I'm saying that if you are anticipating using the camera for weeks... Yeah, well, there's a second question. Just on this record and the way it's come up, I did not understand the government to have ever made any argument, other than the argument that in light of Bucci and the lack of an expectation of privacy, there simply was no search. Is that right? That's my understanding. So although it may be that in a case like this, an argument could have been made that, well, there was reasonable suspicion, so there's no warrant requirement, or probable cause without a warrant might be justified because of the unusual nature of the technology or it's similar to something else. No such argument ever was made. So as this comes to us, the only argument is that it's not a search at all. Is that correct? That's correct. Counsel, it's also true that your motion to suppress made only the argument to which the government responded, and you never asserted that in addition to your Carpenter argument, the record in this case would not show any harmless error because there was never reasonable suspicion and there was never probable cause. So the government addressed only the argument that you made. Well, I don't believe it's a movement's obligation to rebut a harmless error argument that hasn't been made. Well, whatever. But perhaps I will drop harmless error out. But you made a quite limited argument to the district court, and that is what the government responded to. Well, the argument in the district court was that Bucci did not preclude review here. Okay. Let's go back to Carpenter. Are you adopting the suggestion that Judge Barron has just made that a six-day rule from Carpenter applies to poll cameras? I don't think that there is ‑‑ I don't know whether this case requires the court to set any kind of arbitrary rule, and I think you need to look at the facts of the particular case before. I'm not sure that there is a bright line for saying five days is okay and six days is not. Okay. Because on your point of view, eight months is simply too long, even though eight months was involved in Bucci? Eight months, under the broader mode of analysis of what constitutes the expectation of privacy that has been invaded, yes, it doesn't matter. The eight months is too long, whether or not Bucci was surveilled for eight months. Can I ask you one last question? Judge Lynch raised the point about what actual information was introduced here, what was the content of. But I'm puzzled the way this case is coming up to us, because I understand that you've moved to suppress all information derived from the poll camera. Yes. And as I understand it, the government has not contended that there's any way of disaggregating that information. Instead, they've simply said all of it comes in. Is that right? I believe so, but I'm sure the government can address that more directly. Perhaps in a different case there would be some argument that, look, they only entered into the record two or three pictures from the poll camera, and those two or three pictures are no different than what a detective could have obtained. There's no evidence that they used some fancy algorithm to select out those three, so there's no concern. But as the case comes to us, you've simply said I want it all out, and the government says without looking at the specifics, all of it should come in. So what basis do we have for picking and choosing? Well, I think that this court decides whether or not there was a search, and if the court decides that there was a search, then the district court can then hold further proceedings to determine what constitutes the search. Or is that what you're asking for us to do, to vacate and remand for them to reconsider it now? Because here I thought the district court went further. It concluded it was a search and that it was unreasonable. That's right. And so to affirm the district court. And the only argument we have against that from the government, even to this day, is that it's not a search. Is that right? Yes. If the court affirms Judge Young's decision that there was a search, an unreasonable search because there was no warrant, the district court would then have to determine exactly what constituted the fruits of the search. You understand the district court didn't purport to already determine that everything was suppressed. I don't believe that he made a final decision. Counsel, why don't you take 30 seconds to wrap up and then we'll move to... Thank you. I think that the, as we have been discussing, that Carpenter and Jones, Carpenter incorporated expressly the analysis of the Jones concurrences talking about the importance of the associational interests that are protected by the Fourth Amendment are of concern and that Carpenter takes all of that and provides a completely different mode of analysis, a broader mode of analysis than the court used in Bucci and that under that broader mode of analysis, the eight months of 24-7 poll camera surveillance of the activities and associations in the front yard of the house were, as Judge Young found, an unreasonable search. Thank you. Thank you. Good morning. Linda Thompson for Daphne Moore at Pelley. One of the things that becomes clear when you look at Bucci is that in order for a person to have a right of privacy, they have to be proactive. That is, they have to anticipate that the government is going to be surveilling them in order to have an expectation of privacy. The curtilage of a home is covered by a warrant when it's issued. That is, a warrant for the home. But this case does not involve the curtilage. It does involve. The curtilage is what's being observed and recorded. I thought it was the driveway, the garage, not the front door and not the entryway to the house. Well, we did not have an evidentiary hearing, although one was requested by Ms. Moore, but it's clear that this affidavit in evidence describes what I just said, and Judge Young referred to that. So I don't think this is a curtilage case. Isn't the side door curtilage? I think the driveway is curtilage. But at least the side door. And the side door. And the front yard is curtilage. I mean, everything right up to the front door is curtilage. And the suggestion in Bucci, which does not authorize just everything you want to do, Bucci clearly has neither legislative nor judicial parameters. There's no limitation under Bucci as to how long you can do it, what you can be looking for, how clearly you can zero in. One of the things that Bucci does suggest, however, and before I even talk about that, I want to go to Worry and Carpenter. Worry involved a flip phone, which clearly is not the phone that we're using today, and still this court said no, you cannot search a flip phone without a warrant. In Carpenter, they were dealing with technology that was seven years old by the time it got to the Supreme Court. And if you read the arguments before the Supreme Court in the Carpenter case, one of the concerns of the Chief Justice Roberts was, how can there be any time that you can do this, that you can get these documents without a warrant? He said, I don't see why we're trying to draw lines here. And the court did not draw a line saying six days is okay. They said seven days is too long. So you're saying that a poll camera for any length of time is out without a warrant? That's what I think is the appropriate conclusion. So what about the question that I asked earlier of Sister Counsel about the officer sitting across the street with a handheld camera? In a house, in a car. One of the things that I notice is that when you expose something to the public in your neighborhood, you expect your neighbors to notice what you're doing. You notice what they're doing. That's reasonable for your neighbors or somebody passing by. It's different if you're talking about the government. When you are talking about what the government can do, as opposed to what your neighbor or a passerby can do, you are in a different area. I take it then your answer is that the police officer would not be allowed to video record. That is not my answer because I haven't gotten to my answer yet. My answer is... Why don't you get to it? You can take precautions when you know you are being surveilled. The very precautions against the government that are suggested in Bucci. But when you don't know that you're being surveilled, when you don't know that the government has a camera watching you all the time... Would this change Judge Howard's example to a situation in which the officer is hidden? Would it then be impermissible in your view? For the officer to have a camera? Yeah. I don't think so. Okay, well, why not? How is the poll camera different than the hidden officer with a video camera? The hidden officer for six months? For eight months? No. For day one. Day one. You were saying there's no time limit. So the question is, okay, if there's no time limit, day one, what is the difference between the hidden officer with the video camera and the poll camera? Maybe a hidden officer is required to get a warrant. Do you have a position other than that which is tied to poll cameras in particular? If you do, what is it? Poll cameras are surreptitious. You cannot protect yourself against them. Officers, I don't know how surreptitious they are. I had thought you had made an argument which seemed to me to be tied in the briefing to duration, which was the unique capacity of a poll camera never to tire and to be perfect in its ability to record. True. And also to be searchable in a way that ordinary surveillance tactics such as an ordinary video camera were not. That's true. And that's what Chan Chiang considered. Okay. So we're down to duration and searchability. What about focusing in? I think that this camera clearly could focus in on areas of the house that are the curtilage. No, are you saying that that is a constitutionally significant factor as to your carpenter argument? I think what is constitutionally significant here is what Judge Young found was constitutionally significant, the creation of a log that looked into the intimacies of the life of the person because it was continuous and searchable. And one of the clear purposes of this was to capture associations. And suppose the officer sitting, whether hidden or not, in the police car,  I know that that's possible, Judge Lynch, but I don't think that happens. And I think the more electronic surveillance we have, the less likely it is that they're going to have to do anything other than put a poll camera up and sit in their office and look at the poll camera. Okay. So the argument is it's now become too easy for the government. And because it's become too easy, there should be constitutional limitations? It's too invasive. It's not just too easy, it's too invasive. But it's no more invasive than the officer sitting there. So the argument has to be slightly different than that. I think that what Carpenter said was it is the compilation, it is the aggregation of all of that information that is the search and that is the invasion of privacy. And I do notice that the Fourth Amendment doesn't use the word privacy. It uses the words secure against unreasonable searches and seizures. Okay. Security and privacy are clearly not the same thing. I do not believe that the founders and the people who ---- One last question before you finish. If we get past the law of the circuit question and we think the Bucci rationale because of its categorical nature is in tension with the outcome of Carpenter, all that means is we have to consider the question on our own and decide whether it is a search and if it is a search or was it unreasonable. And in that regard, a distinction which may bear both on the question of whether it's a search and on the question of whether it was reasonable is the fact that all we have is Carpenter and Carpenter emphasizes the whole of the movements and that resonates very much with Jones which also is worried about. Now it's true in both Carpenter and Jones one could say that because all of those movements occurred in public it would have been possible for the government to tail someone and it's not unheard of for the government not to do a stakeout in a single place but to tail someone everywhere. Nonetheless, the court wasn't impressed with that contention in Carpenter and concluded it was an unreasonable search. But here it is a focused single place. It is not the whole of the movements of the person. So why doesn't that matter in your view? It's the whole of the movements of the person in and out of their home which can hardly be a decision to simply expose yourself to the public. And it's also, it's not limited to that. It's the associations of that person. It's in Kylo, one of the things the court said was what happens in the house, that's intimate, that's off limits. But when you have a poll camera, it tells you who goes into the house, who's there for how long. It tells you what is happening in the house. There are visitors in the house, who they are, all of those sorts of things. So I think that it's very difficult with Jones and Carpenter to suggest that making this digitally searchable log in front of Ms. Moore's house for eight months, for three months, for two months without a warrant. One of the things that Katz said in the main opinion was the police had said, look, we were so good. We were narrow. We limited what we did. We only listened to the person who was in the phone booth. We didn't listen to the person on the other end. And Justice Stewart said, wonderful, then you can get a warrant. Thank you. Thank you, Counsel. Your Honors, if I could just briefly respond to a few different points raised in both of the arguments. One on the question of associations. It's no doubt true that associations were shown by this information, but associations are shown by a wealth of different kinds of searches that are allowed, including pen registers, bank records. All of these things do establish associations. If that were enough itself to make it impermissible, those cases would have come out differently than the Supreme Court decided them. So it's a factor, but it's not dispositive. But I also think it's important to note this discussion of a searchable log is often given more weight than the record can support. The record here suggests that the video was searchable in the sense that one could go forward and backward as one can on one's VCR, not that one could in some other way search it in a way that it could, as was considered important in Carpenter, get at information otherwise unknowable. This was information that was knowable in the same way that you can find the show you want to watch on your VCR and in no other way. And the record doesn't support an idea that there was somehow more an intrusive possibility from the information provided here. Another thing I think is really important to note is Your Honor, Judge Barron talks about the rationale of Carpenter, but it can't be divorced from the limitations of Carpenter expressly put on the opinion itself. And that is not only is the rationale, as the government argued initially, very narrow in its focus, but the court specifically said this is a narrow decision, and secondly, it does not call into question traditional surveillance techniques. Poll cameras are nothing if not a traditional surveillance technique. They're relied on as such in Title III warrant applications as one of the conventional techniques one uses and has to try to exhaust before seeking that kind of permission. So it is absolutely a traditional technique, and I don't think this Court is free, especially given its ongoing position that it is bound by dicta no less than by the holdings of Supreme Court decisions to ignore what the Supreme Court said about how broadly its opinion reaches. If it were to interpret the rationale to obviate the limitation, the limitation must control. Is there something you could point us to in the record or something that we could take note of in case law or something that would help us figure out whether a poll camera used for this duration and trained on the part of the house that it was would constitute a traditional surveillance technique? I think without saying, I don't think I can do it right now. We did cite to a large number of district court opinions going back many years that have approved them. I could look through them to say if some of them involve the exact same area for the same period of time. Certainly they involve a significant period of time, and a lot of them would be because they're placed often across the street, would involve the same area. I think it's very likely that it has been in existence for some time. Again, I think it's well within, because it's an old-school technology, what we would call a traditional surveillance technique. Then it's difficult to see that carpenter itself allows itself to be read so broadly as to undermine those kinds of techniques when it took the time to specifically say that it did not. Finally, I guess I want to say that the government's position, Judge Barron, is not an all or nothing one. We did, in motion for reconsideration, point out the specific images we sought to introduce. This was not a case where it was simply we want it all or we want none of it. We offered to the court the particular images that we wished to introduce, and that was the basis on which the court denied reconsideration. So there is a more bounded, if the court wished to consider it, way of looking at what was at issue here. I would also note that we make a good faith argument as well. Could you just clarify that last point? You said that was the basis that would deny the motion for reconsideration. That was the information before. It's difficult to know what the district court. Are you denying that argument prior to the motion for reconsideration? I believe that we had made that. I can look at the actual sequence of events. I believe we offered those images as the images we sought at the time this was being litigated. We brought it to the court's attention in the context of motion for reconsideration. Judge Lynch, did you have a question? Yeah. I don't think your response quite gets to the question Judge Barron raised, which is if you wanted to make these other arguments about the existence of suspicion, about the existence of probable cause, so on and so forth, why didn't you make them in response to the motion to suppress? And why do you raise Leon for the very first time in the motion for reconsideration? As to the first issue, I concede that we did not make the argument that probable cause did exist or could have supported the poll camera at some particular juncture in time. That's not an argument that we made below, and it's not an argument we made in our brief. With respect to good faith, though, I think there's a point that needs to be made. Good faith analysis of Davis rose in a context where binding precedent had changed already at the time that the issue was being litigated. That is, the Supreme Court had decided Arizona v. Gantt would change the circumstances under which an incident to arrest could be performed. Okay, you may have a very good faith argument, but Judge Young thought you had waived it by not making it. The reason we don't think that's true is we don't think a Davis claim arises until there's been a change in intervening precedent. That was the logic of Davis. At the point it became right, it became possible at the time at which you were, you had a change in precedent and you were arguing that the prior precedent would have supported the activity. So to do what is a theory is not right now either. Well, it is appropriately addressed by this Court should the Court change its mind. We can't decide until a petition for rehearing on that theory. Well, I think that we raised it as early as we thought we could to make sure recognizing this Court would have concerns about it. But I think in our view it does not... Wait, was Carpenter was out before the suppression motion was litigated? It was, but again, we are rejecting the argument that Carpenter itself overruled. If it had Carpenter itself overruled it, then we would have been unnoticed that we needed to make a good faith argument. The argument here is that... But that's a suggestion that a district court can't rely on the second exception to the law of the circuit rule, isn't it? Because if it can, you should have raised it then. Well, again, it depends on how one interprets the good faith exception had ordinarily been raised just at a different level. We're unaware of a case in which a district court, in fact, essentially held that it should be an alternative to every argument. We did not violate the Fourth Amendment, but if we did, we relied in good faith. That is not the way Davis has been applied, which is to say that it's essentially always a corollary to every filing. No, it's not every filing. It's when the filing is that the precedent you're relying on has been undermined by the subsequent Supreme Court case. It gives you lots of notice that if you'd like to say we had a good faith reason to do this because of the binding nature of the case that was in place at the time, why do you not put a prize to that? It's not as if every single time there's a Fourth Amendment challenge you have to make a good faith argument. But the whole dispute below is whether there was a binding precedent that controlled. In that instance, what is the reason not to say, well, even if you think it doesn't control, good faith still protects us? Well, again, I think it's the government's position that the way the good faith exception works is it works after a change in binding precedent has occurred. In the government's view, the binding precedent, which is still good law until this Court finds otherwise, is Bucci. And the argument that we could have relied on Bucci doesn't become right until Bucci is no longer the law. Thank you. Thank you, Your Honor.